**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**JAMES ANDREW FISHER**                                                        **PLAINTIFF**

**v.**                                                      **CIVIL ACTION NO. 3:24-cv-75-MPM-JMV**

**TROOPER JASON YOUNG, individually**                        **DEFENDANT**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Trooper Jason Young, in his individual capacity, and submits his Memorandum of Authorities in Support of his Motion for Summary Judgment, and in support would show unto the Court as follows:

**INTRODUCTION & BACKGROUND**

Defendant Jason Young is a Trooper First Class with the Mississippi Highway Patrol. *See* Motion Exh. 1 at ¶ 1 (Decl. of Jason Young). In 2022, he was assigned Troop E in Batesville, Mississippi. On March 5, 2022, Trooper Young was working a "safety checkpoint" on Highway 301 in Desoto County close to Hernando. *Id.* at ¶ 2. While he was working the checkpoint, he noticed a vehicle make a U-turn ostensibly to avoid the checkpoint. *Id.* Accordingly, Trooper Young got in his patrol car and pursued the vehicle that had made the U-turn. *Id.* After the vehicle pulled over to the side of the road, Trooper Young exited his patrol car and approached the vehicle. *Id.* Trooper Young detected the odor of alcohol emanating from the vehicle. *Id.* The driver of the vehicle handed Trooper Young his driver's license, which identified him as James Fischer, Jr. *Id.* Trooper Young proceeded to ask Fischer whether he had been drinking. *Id.* Fischer told Trooper Young

that he had not been drinking. *Id.* Trooper Young noticed that Fischer's speech was slurred. *Id.*

Based on his observations, Trooper Young administered a breathalyzer test to Fischer. *Id.* The testing device indicated that his blood alcohol content was .069%. *Id.* Trooper Young then administered a second breathalyzer test to Fischer. *Id.* The second test showed that Fischer had a blood alcohol content of .072%. *Id.* Fischer claims that there "was no alcohol in [his] system." Complaint at ¶ 11, Doc. 1. Trooper Young then issued Fischer citations for careless driving and unsafe lane change. Motion Exh. 1 at ¶ 2. Additionally, Trooper Young called a tow-truck to tow Mr. Fischer's vehicle. *Id.* He did so because Fischer was intoxicated. *Id.* Trooper Young instructed Fischer to call his wife to come pick him up. *Id.* Fischer was driven from the scene by his wife. *Id.* Fischer paid $222 to release his vehicle. Complaint at ¶ 14, Doc. 1.

Following the incident at the safety checkpoint, Fischer made a post on Facebook criticizing Trooper Young's actions. *Id.* at ¶ 15. Fischer ultimately pleaded no contest/guilty in Desoto County Justice Court as to both the unsafe lane change and careless driving charges. Motion Exh. 1 at ¶ 3; *see* Exh. "A" to Young Decl. (Desoto County Justice Court Abstract of Court Record).

On June 14, 2022, Trooper Young was patrolling Highway 301. Motion Exh. 1 at ¶ 4. After stopping a vehicle, Trooper Young "happened to see Mr. Fischer driving south on Highway 301." *Id.* He recognized Mr. Fischer's truck from the safety checkpoint. *Id.* After completing the traffic stop, Trooper Young continued patrolling Highway 301 and made another stop. *Id.* Following that stop, Trooper Young turned around and headed north on Highway 301. *Id.* Subsequently, Trooper Young "observed Mr. Fischer speeding as he was traveling south on Highway 301." *Id.*; *see* Exh. "B" to Young Decl., June 14, 2022 Dashcam

Video, at 00:25. Trooper Young's dash-mounted radar showed that Fischer was traveling 55 mph. Motion Exh. 1 at ¶ 4. The speed limit was 45 mph. *Id.* The radar was properly calibrated. *Id.*

Trooper Young turned on his blue lights, performed a U-turn, and pursued Fischer's vehicle. *Id.*; June 14, 2022 Daschcam Video, at 00:30. Fischer pulled over on the side of Highway 301. *Id.*; June 14, 2022 Daschcam Video, at 01:15. Trooper Young exited his patrol car, approached Fischer's vehicle, and asked him for his driver's license. June 14, 2022 Dashcam Video, at 01:22. After obtaining his license, Trooper Young explained to Fischer that he had been driving 55 mph in a 45 mph zone. *Id.* at 01:48. Trooper Young then issued Fischer a speeding ticket. *Id.* at 4:15. After receiving the ticket, Fischer told Trooper Young, "I'll see you in a few weeks, punk." Complaint at ¶ 25, Doc. 1. As Trooper Young walked back to his patrol car, Fischer floored his accelerator and spun his tires, kicking up rocks from the side of the road onto Trooper Young's vehicle. Motion Exh. 1 at ¶ 5; June 14, 2022 Dashcam Video, at 04:27. As he turned left onto Pratt Road, Fischer flipped Trooper Young off with his left hand. June 14, 2022 Dashcam Video, at 04:33.

Trooper Young turned on his blue lights and pursued Fischer down Pratt Road. June 14, 2022 Dashcam Video, at 04:40. Fischer pulled over on the side of Pratt Road. June 14, 2022 Dashcam Video, at 05:05. Trooper approached Fischer's vehicle and ordered him to exit the vehicle. June 14, 2022 Dashcam Video, at 05:20. Fischer exited the vehicle, and Trooper Young handcuffed him. June 14, 2022 Dashcam Video, at 05:30. Trooper Young then placed Fischer in the back of his patrol car. June 14, 2022 Dashcam Video, at 06:05. Trooper Young subsequently issued Fischer additional citations for

disorderly conduct and careless driving. Motion Exh. 1 at ¶ 6. Trooper Young also had Fischer's vehicle towed. June 14, 2022 Dashcam Video, at 48:05.

According to Fischer, he was held at the Desoto County Jail for six hours before posting bail. Complaint at ¶ 30, Doc. 1. He paid $275 for bail and $262.15 to release his vehicle from the impoundment lot, as well as a bond of $445. *Id.* at ¶ 31. Fischer went to trial in Desoto County Justice Court on the charges of disorderly conduct, careless driving, and speeding. Motion Exh. 1 at ¶ 7. The Justice Court Judge found Fischer not guilty of disorderly conduct and careless driving. *Id.*; *see* Exh. "C" to Young Decl. (Desoto County Justice Court Abstract of Court Record). The Judge dismissed the speeding charge following trial. *Id.*

Fischer filed the present complaint on April 1, 2024, naming as Defendants Trooper Young and the Mississippi Department of Public Safety. Complaint, Doc. 1. Fischer subsequently stipulated to the dismissal with prejudice of all claims against the Mississippi Department of Public Safety. Doc. 15. Accordingly, the only remaining Defendant is Trooper Young, in his individual capacity.[1]

Fischer asserts the following claims: (1) a Fourth Amendment illegal seizure claim based on Trooper Young's impoundment of his vehicle at the safety checkpoint on March 5, 2022; (2) a First Amendment retaliation claim based on Trooper Young's actions on June 14, 2022 following the first stop on Highway 301; (3) a Fourth Amendment false arrest claim; (4) a Fourth Amendment illegal seizure claim based on Trooper Young's

---

[1] Fischer originally sued Trooper Young in both his official and individual capacities. Complaint, Doc. 1. However, since Fischer has dismissed with prejudice all of his claims against the Department of Public Safety, due to its Eleventh Amendment immunity, any official-capacity claims against Trooper Young should also be dismissed. The State's immunity under the Eleventh Amendment extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Hughes v. Savell*, 902 F.2d 376, 377-78 (5th Cir. 1990).

4

impoundment of his vehicle on June 14, 2022; and (5) state-law malicious prosecution claims for charging him with careless driving and disorderly conduct.[2] Complaint at ¶¶ 36-66, Doc. 1. Fischer seeks an unspecified amount of damages for "damage to his reputation; past physical pain and suffering; past, present, and future emotional distress; medical bills and other financial issues." *Id.* at ¶ 76.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving

---

[2] Fischer also asserted a *Monell* claim against the Department of Public Safety, but that claim has been dismissed. Complaint at ¶¶ 67-74; Doc. 15 (Stipulation of Dismissal).

party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (citing *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002)).

## QUALIFIED IMMUNITY STANDARD

The doctrine of qualified immunity shields public officials from suit and civil liability for damages, provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In other words, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). The doctrine "attempts to balance two competing societal interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020).

Once the defense of qualified immunity has been raised, the plaintiff has the burden of demonstrating that "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019). "Both steps in the qualified immunity analysis are questions of law." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). Courts are "free to decide which of the two prongs of the qualified immunity analysis to address first." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016).

6

"The clearly established prong is difficult to satisfy." *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). "When considering a defendant's entitlement to qualified immunity, [a Court] must ask whether the law so clearly and unambiguously prohibited his conduct that every reasonable official would understand that what he is doing violates [the law]." *McLin v. Ard*, 866 F.3d 682, 695 (5th Cir. 2017). "To answer that question in the affirmative, [courts] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 696. "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Id.*

"It is the plaintiff's burden to find a case in [his] favor that does not define the law at a high level of generality." *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (internal quotation marks and citation omitted)). That is, the plaintiff must "identify a case – usually, a body of relevant case law – in which an officer acting under similar circumstances … was held to have violated the [Constitution]." *Bartlett*, 981 F.3d at 330. Thus, the "clearly established law" "must be 'particularized' to the facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up; quoting *White v. Pauly*, 580 U.S. 73 (2017)). A plaintiff must also show that "the violated right was clearly established at the time of the alleged violation." *Bartlett*, 981 F.3d at 329.

## ARGUMENT

**I.     Trooper Young is Entitled to Qualified Immunity as to Fischer's Illegal Seizure Claim Based on Impoundment of Vehicle on March 5, 2022.**

Fischer alleges that Trooper Young violated the Fourth Amendment by having his vehicle towed and impounded without probable cause. Complaint at ¶¶ 37-40. According

7

to Fischer, Trooper Young did not have probable cause to seize his vehicle because Young did not arrest him or take him to jail, and because he had not consumed alcohol. *Id.* at ¶ 38. However, Trooper Young is entitled to qualified immunity because it was not clearly established at the time of the underlying incident (March 2022) that impounding a vehicle under the circumstances at issue here constituted a unconstitutional seizure.

It is well established that "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Thus, the "impoundment" of a vehicle is constitutionally "permissible so long as it [i]s carried out in furtherance of a community caretaking function." *U.S. v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999) (citations omitted). "Under the community caretaking exception, police may impound vehicles in furtherance of public safety or community caretaking functions such as removing disabled or damaged vehicles" and "automobiles that violate parking ordinances jeopardizing both the public safety and the efficient movement of vehicular traffic." *Degenhardt v. Bintliff*, 117 F.4th 747, 756 (5th Cir. 2024) (cleaned up). "In considering whether this exception applies, our constitutional analysis hinges upon the reasonableness of the 'community caretaker' impound viewed in the context of the facts and circumstances encountered by the officer." *United States v. McKinnon*, 681 F.3d 203, 208 (5th Cir. 2012).

Here, Trooper Young impounded Fischer's vehicle he reasonably believed that Fischer was intoxicated and thus a threat to public safety. Fischer made a U-turn to avoid the checkpoint, and two breathalyzer tests showed that his blood alcohol content was near the legal limit of 0.08%. *See* Motion Exh. 1 at ¶ 2. Fischer cannot dispute Trooper Young's uncontradicted testimony that the breathalyzer tests showed that he was under the

8

influence of alcohol. Under the community caretaker exception, a law enforcement official may impound a vehicle driven by a person who is intoxicated and may pose a threat to public safety. *See Degenhardt v. Bintliff*, 117 F.4th 747, 757 (5th Cir. 2024) (observing that law enforcement officers could have impounded vehicle under community caretaker exception if they "reasonably believed that [plaintiffs] were intoxicated"). For this reason alone, Trooper Young is entitled to summary judgment.

Regardless, Trooper Young is entitled to qualified immunity because it was not clearly established at the time of the underlying incident (March 2022) that an unconstitutional seizure occurs if a law enforcement officer impounds a vehicle but does not arrest the driver for a crime that he or she could have been lawfully arrested for. In *Degenhardt v. Bintliff*, 117 F.4th 747 (5th Cir. 2024), the defendant officers impounded a vehicle driven by an 18-year old, issued citations to the driver and passenger for possession of alcohol by a minor, and issued a warning for reckless driving. *Id.* at 752. However, the defendants did not arrest the plaintiffs, and the charges were subsequently dismissed. *Id.* Moreover, the defendants did "not assert that they impounded the vehicle because the [plaintiffs] were intoxicated; only that they had probable cause to arrest them for possessing alcohol." *Id.* at 757.

The Fifth Circuit concluded that the plaintiffs stated a claim for a Fourth Amendment violation because the defendants "failed to articulate a lawful justification to seize the vehicle." *Id.* However, the Fifth Circuit held that the defendants were entitled to qualified immunity given that it was not "clearly established that impounding a vehicle when the available drivers were cited for a crime for which they could be arrested but were not amounted to an unconstitutional seizure." *Id.* The impoundment in *Degenhardt* occurred on March 20, 2022. *Id.* at 751.

Here, it is indisputable that on March 5, 2022, Trooper Young cited Fischer for two crimes – unsafe lane change and careless driving – for which Fischer could have been arrested. The Supreme Court has held "[t]he Fourth Amendment does not forbid a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine." *Atwater v. City of Lago Vista*, 532 U.S. 318, 348-50 (2001) (upholding constitutionality of an arrest for a fine-only traffic offense). Moreover, the Court of Appeals of Mississippi has made clear that law enforcement officers may arrest motorists for the misdemeanor of careless driving. *See Spencer v. State*, 908 So. 2d 783, 785-87 (Miss. Ct. App. 2005) (citing Miss. Code Ann. § 99–3–7). Accordingly, Trooper Young is entitled to qualified immunity.

## II.     Trooper Young Should Be Granted Qualified Immunity on Fischer's First Amendment Retaliation Claim.

Fischer contends that Trooper Young violated his First Amendment rights by retaliating against him on June 14, 2022 because he called Trooper Young a "punk" and "showed him the middle finger" after Trooper Young issued him the first ticket for speeding. Complaint at ¶ 43. He also claims that Trooper Young retaliated against him for the critical Facebook post that he made after the first incident in March 2022. *Id.* at ¶ 42. According to Fischer, Trooper Young violated his First Amendment rights by "conducting a second traffic stop," "falsely citing [him] for disorderly conduct and careless driving," "arresting" him, and "impounding his vehicle." *Id.* at ¶ 45. Fischer's First Amendment retaliation claim fails because he cannot prove that Trooper Young lacked probable cause for his arrest and prosecution.

To prevail on a First Amendment retaliation claim, the plaintiff must prove the

absence of probable cause.³ *See Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) ("Absent . . . a showing [of no probable cause], a retaliatory arrest claim fails.."). If an officer has probable cause to arrest or charge a person with a crime, "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017). In the First Amendment retaliation context, "probable cause 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (citations omitted). Accordingly, officers are entitled to qualified immunity "unless there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest." *Id.* (citations omitted). Moreover, "probable cause may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform[ed the] arrest." *Id.* (citation omitted). And "[w]hether the crime actually occurred or whether a suspect is eventually convicted is irrelevant to the probable cause analysis." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 754 n.10 (5th Cir. 2001). The officer's belief that an offense was committed need not "be correct or more likely true than false." *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000).

Fischer cannot prove that Trooper Young was objectively unreasonable in determining that he had probable cause to arrest him and charge him with careless

---

³ There is a "narrow" exception to the probable cause requirement for First Amendment retaliation claims. *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019). Under this exception, the plaintiff must "present[] objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407. Fischer cannot provide such objective evidence.

11

driving. That is, he cannot establish that all reasonable officers in Trooper Young's position would have known that arresting him and charging him with careless driving violated the Constitution. Trooper Young's dashcam video plainly shows that, after Trooper Young had issued him the speeding ticket, Fischer hit his accelerator, spun his tires, kicked up rocks, and abruptly pulled onto Highway 301 while Trooper Young was walking back to his patrol car. *See* June 14, 2022 Dashcam Video, at 04:25. If there had been a car traveling on Highway 301 by the location where Fischer was stopped at the time he peeled out, he could have hit it.

Mississippi Code Section 63-3-1213 provides as follow: "Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving." Mississippi courts have noted that "[c]arelessness is a matter of reasonable interpretation, based on a wide range of factors." *Henderson v. State*, 878 So. 2d 246, 247 (Miss. Ct. App. 2004). Thus, there is no clearly established law as to what constitutes careless driving under Mississippi law. In other words, it cannot be said that all reasonable officers would have known that they lacked probable cause to arrest Fischer for careless driving and charging him with that offense. Thus, Trooper Young's belief that he had probable cause was objectively reasonable given the undisputed facts as shown on Trooper Young's dashcam video. For this reason alone, Trooper Young is entitled to qualified immunity on Fischer's First Amendment retaliation claim.

Further, to the extent that Fischer argues that he can prove a First Amendment retaliation claim and overcome Trooper Young's qualified immunity based on the lack of probable cause for the disorderly conduct charge, he is mistaken. At the time of this

12

incident, there was no clearly established law that a lack of probable cause as to one charge vitiates probable cause for an arrest or prosecution based on another charge for which there is probable cause. Indeed, the United States Supreme Court did not clarify that "the presence of probable cause for one charge does not automatically defeat a Fourth Amendment malicious-prosecution claim alleging the absence of probable cause for another charge" until last year. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 561 (2024); *see Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 297 (3d Cir. 2024) (granting qualified immunity based on the lack of clarity regarding whether probable cause for any crime defeats a malicious prosecution claim). The Fifth Circuit has held that, in the First Amendment retaliation context, "probable cause may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform[ed the] arrest." *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017). The Fifth Circuit has never held that the any-crime rule does not apply to First Amendment retaliation claims based on pressing charges. Accordingly, Trooper Young did not violate clearly established law.

Last, insofar as Fischer contends that he can make out a First Amendment retaliation claim based on Trooper Young's impoundment of his vehicle on June 14, 2022, his argument must be rejected. It is well settled that when a driver has been arrested and there is no one present to immediately take custody of the vehicle, a law enforcement official does not violate constitutional rights of the vehicle's owner by calling a towing company to remove the vehicle from the side of the road. *See U.S. v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012) (holding that police officer's decision to impound vehicle when it "could not lawfully be driven away from the scene" and would have been "left on a public street where it could have become a nuisance" or "been stolen or damaged" was lawful);

*United States v. Duguay*, 93 F.3d 346, 354 n. 2 (7th Cir. 1996) ("Impoundments by Illinois police have been affirmed in many circumstances where the arrestee could not provide for the speedy and efficient removal of the car, such as where the driver is the sole occupant and is legitimately arrested.") (citations omitted); *United States v. Ponce*, 8 F.3d 989, 995-96 (5th Cir. 1993) (same). Because Trooper Young had an objectively reasonable belief that probable cause existed to arrest Fischer for careless driving, Fischer's retaliatory seizure claim fails as a matter of law.

In any event, Trooper Young is entitled to qualified immunity as to his decision to impound Fischer's vehicle on June 14, 2022 because "existing precedent had not 'placed the constitutional question beyond debate.'" *Degenhardt v. Bintliff*, 117 F.4th 747, 759 (5th Cir. 2024) (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013)). In *Degenhardt*, the Fifth Circuit recognized the lack of any caselaw on "retaliatory seizures of property." *Id*. Accordingly, the Court granted the defendants qualified immunity on the plaintiff's First Amendment retaliatory seizure/impoundment claim, finding that the Court "had not clearly addressed whether probable cause to initiate an *arrest* (i.e., a seizure of a person) is a sufficient reason to seize property in that person's possession." *Id*. The same holds true here. For these reasons, Trooper Young is entitled to qualified immunity as to Fischer's First Amendment retaliation claim.

### III. Trooper Young is Entitled to Qualified Immunity On Fischer's False Arrest Claim.

Fischer also asserts an "unlawful detention" claim under the Fourth Amendment, alleging that Trooper Young lacked probable cause to arrest him and deprive him of his freedom on June 14, 2022. Complaint, at ¶ 51. This claim fails for the same reason that Fischer's First Amendment retaliation claim fails: the incontrovertible evidence

14

establishes that Trooper Young had an objectively reasonable belief that Fischer had at committed the crime of careless driving in his presence.

"Probable cause exists when all of the facts known by a police officer 'are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.'" *Sam v. Richard*, 887 F.3d 710, 715 (5th Cir. 2018) (quoting *State v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017)). "The test is objective, not subjective. Accordingly, the officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). "The probable cause can be for any crime, not just the one the officer subjectively considered at the time." *Defrates v. Podany*, 789 Fed. Appx. 427, 431 (5th Cir. 2019). Moreover, "[c]laims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest," and therefore, "[i]f there was probable cause for any of the charges made … then the arrest was supported by probable cause, and the claim for false arrest fails." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

As shown above, *see supra* at pp. 11-12, based on the indisputable evidence in the dashcam video, plaintiff cannot demonstrate that all reasonable officers would have known that there was no probable cause to arrest Fischer for careless driving on June 14, 2022. Plaintiff cannot cite a Fifth Circuit case involving similar circumstances in which a law enforcement official was held to have violated the Fourth Amendment by arresting someone for careless driving. Accordingly, Trooper Young should be granted qualified

15

immunity as to this claim.

### IV. Fischer Cannot Demonstrate That Trooper Young Violated Clearly Established Fourth Amendment Law By Impounding His Vehicle on June 14, 2022.

Fischer also claims that Trooper Young violated his Fourth Amendment rights by impounding his vehicle on June 14, 2022 based on "false charges" of careless driving and disorderly conduct. Complaint, at ¶ 54. Again, this claim fails because a law enforcement official "can impound a vehicle under the community caretaker exception after the driver has been arrested," and "the reason for which the driver was arrested (i.e., the probable cause)" "is irrelevant." *Degenhardt v. Bintliff*, 117 F.4th 747, 756 (5th Cir. 2024) (citing *Opperman*, 428 U.S. at 369 n.5). This is so because "[w]hen a driver is arrested, the police need to get the vehicle off the road so that it does not impede traffic or jeopardize public safety and to protect the vehicle itself." *Id.* (citing *Opperman*, 429 U.S. at 368-69; *McKinnon*, 681 F.3d at 208-09); *see Trent v. Wade*, 776 F.3d 368, 387 n.13 (5th Cir. 2015) (noting that community caretaker exception "typically applies when the owner of the vehicle has been arrested while the vehicle is on the public streets"). Because it is undisputed that Trooper Young arrested Fischer on June 14, 2022, he had sufficient justification to impound Fischer's vehicle under the community caretaker exception.

Regardless, it was not clearly established in June 2022, that impounding a car based solely on the fact that the driver had been arrested violated the Fourth Amendment. Fischer cannot cite any Supreme Court or Fifth Circuit case holding that a law enforcement official violated the Fourth Amendment by seizing a driver's car under the community caretaker exception after arresting him. Accordingly, this claim fails as a matter of law.

### V. Trooper Young is Entitled to Summary Judgment on Fischer's

16

**Malicious Prosecution Claims.**

Last, Fischer asserts two malicious prosecution claims. Complaint, at ¶¶ 53-66. He alleges that Trooper Young instituted criminal proceedings against him without probable cause to believe he had committed the crimes of careless driving or disorderly conduct and "in order to punish [him] for the Facebook post" and his "exercise of his First Amendment rights." *Id.* at ¶ 59. However, Trooper Young is entitled to summary judgment on Fischer's malicious prosecution claims because there is not a triable issue of fact as to whether the subject criminal proceedings were instituted without probable cause.

To prevail on a malicious prosecution claim, a plaintiff must prove (1) the institution of a criminal proceeding; (2) by, or at the instance of, the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceeding; (5) lack of probable cause for the proceeding; and (6) the plaintiff's suffering of injury or damage as a result of the prosecution. *McClinton v. Delta Pride Catfish, Inc.*, 792 So.2d 968, 973 (Miss. 2001). "Probable cause requires the concurrence of (1) a subjective element—an honest belief in the guilt of the person accused, and (2) an objective element—reasonable grounds for such beliefs." *Funderburk v. Johnson*, 935 So. 2d 1084, 1098 (Miss. Ct. App. 2006) (quoting *Strong v. Nicholson*, 580 So. 2d 1288, 1294 (Miss. 1991)). "The determination of probable cause is similar to negligence analysis and is usually a question for the court, not for the jury." *Id.* (citing *Strong*, 580 So. 2d at 1294; W. Prosser & W. Keeton, *The Law of Torts*, § 119 (5th Ed.1984)). "The court must determine whether, from the facts apparent to the defendant, a reasonable person would have initiated the prosecution." *Id.* at 1098-99.

The indisputable video evidence taken from Trooper Young's dashcam video shows

17

that after receiving the speeding ticket, Fischer angrily pressed his accelerator, spun his tires, kicked up rocks in the direction of Trooper Young's patrol car, and abruptly pulled his truck onto Highway 301. June 14, 2022 Dashcam Video, at 04:25. As discussed above, based on this conduct, Trooper Young had an honest and reasonable belief that he had probable cause to charge him for this conduct and thereby initiate a prosecution. Whether this conduct met all of the requirements for disorderly conduct is irrelevant. This conduct supported an objectively reasonable belief that Fischer had committed the crime of careless driving. That is, it was reasonable for Trooper Young to believe that Fischer had driven his "vehicle in a careless or imprudent manner, without due regard for . . . traffic and use of the streets and highways and all other attendant circumstances." Miss. Code Ann. § 63-3-1213.

As noted above, "[c]arelessness is a matter of reasonable interpretation, based on a wide range of factors." *Henderson v. State*, 878 So. 2d 246, 247 (Miss. Ct. App. 2004). Indeed, probable cause has been held to exist under the careless driving statute when a vehicle approached the curb twice. *See id.* at 247. The indisputable conduct at issue here is much more egregious than coming close to a curb. For these reasons, Trooper Young should be granted judgment as a matter of law as to Fischer's malicious prosecution claims.

## CONCLUSION

Based on the foregoing, Defendant Jason Young respectfully requests that the Court grant his Motion for Summary Judgment.

RESPECTFULLY SUBMITTED, this the 10th day of April 2025.

**Trooper Jason Young, in his individual capacity**

*Defendants*

LYNN FITCH
Attorney General of Mississippi

By: */s/ Wilson Minor*
Wilson Minor, MSB #102663
Special Assistant Attorney General

STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
P.O. Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3523
Fax: (601)359-2003
Wilson.minor@ago.ms.gov
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the ECF system which provided notice to all counsel of record.

This, the 10th day of April, 2025.

　　　　　　　　　　　　　　　　　　　　*/s/ Wilson Minor*
　　　　　　　　　　　　　　　　　　　　Wilson Minor